UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  FEB 0 6 2016  ★

BROOKLYN OFFICE

------------------------------------------------------------ X
                          :

**NICHOLAS KENNEDY,**
                          :

             Petitioner,
                          :         **MEMORANDUM DECISION and**
                          :                   **ORDER**

           - against -
                          :
                          :         12 Civ. 737 (AMD)

**WILLIAM CONNOLLY,**
                          :

              Respondent.    :
------------------------------------------------------------ X

**ANN DONNELLY,** District Judge.

        The petitioner, currently incarcerated at Bare Hill Correctional Facility, petitions for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254;[1] he seeks relief from his Suffolk County

Court conviction, and alleges that he is being held in state custody in violation of his federal

constitutional rights.  For the reasons set out below, the petition for a writ of habeas corpus is

denied.

## PROCEDURAL HISTORY

        On March 28, 2008, following a jury trial in Suffolk County Court, the petitioner was

convicted of Criminal Possession of a Controlled Substance in the Second and Third Degrees,

Criminal Possession of Marijuana in the Fifth Degree, as well as two traffic violations—failure

---

[1] Under Section 2254, a petitioner must show that the state court decision was decided on the merits and is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

1

to signal a turn, and failure to display a headlight. The petitioner was represented by counsel throughout his trial.

## A. Criminal Trial

### i. *Witness Testimony*

Officer Francis Rathgeber, from the Suffolk County Police Department, was assigned to Community Oriented Police Enforcement on March 31, 2007, when he saw the petitioner's Lexus sport utility vehicle driving north on Lowell Avenue at around 8:00 p.m. (Trial Tr. at 59–63 (ECF No. 12-8).) One of the headlights was out, and the driver of the Lexus failed to signal when he made a right hand turn. (*Id.* at 63.) Officer Rathgeber stopped the car and approached it; using a flashlight, he saw a marijuana cigarette on the passenger side floor area. (Trial Tr. at 65–67.)

After the petitioner got out of the car, Officer Rathgeber's supervisor, Sergeant James Scimone, leaned through the open driver side door to retrieve the marijuana cigarette. (*Id.* at 69, 158.) As he did so, he spotted a plastic bag next to the driver's seat, which appeared to contain narcotics. (*Id.* at 69–70, 158.) The officers arrested the petitioner, and he was taken to the precinct. (*Id.* at 70, 86.) Detective John Newton performed field tests on the marijuana and the cocaine; both tested positive. (*Id.* at 86.)

At the precinct, the officers recovered two cell phones and hundreds of dollars in cash. (*Id.* at 87–88.) Officer Rathgeber found a small amount of cocaine inside the front left pocket of the petitioner's pants.[2] (*Id.* at 96.) Immediately following this testimony, the trial court judge gave the following curative instruction:

> Members of the jury, evidence of an accused's commission or alleged commission of
> another or other bad acts or crimes is not admissible solely to establish criminal

---

[2] Prior to trial, the judge ruled, over the petitioner's objection, that the residue was admissible and relevant to connect the petitioner to the cocaine, and to establish his intent. (Trial Tr. at 3–6.)

disposition or propensity. Stated otherwise, one may not be convicted of one charge or proof that he is probably guilty because he or she has or may have committed another crime or bad act. These are events in which, if believed by you, are admissible as necessary in order for you to understand other parts of the testimony, specifically that the petitioner's knowledge [sic] of the presence of drugs, and are necessary to complete the narrative or description of the events so as to not to have those events received in a vacuum.

But, again, if you believe the witness, that aspect of the testimony regarding allegations of other crimes or bad acts, may not alone give rise to even an inference that he or she committed any or all of the charges contained in the Indictment.

(*Id.* at 91–92.) The officers did a field test on the residue, which was positive for the presence of cocaine. (*Id.* at 93.) Defense counsel objected to the assistant district attorney's attempts to have the officer opine about the petitioner's intent; the judge sustained each objection.[3] (Trial Tr. at 98–100.)

---

[3] In relevant part, the assistant district attorney's attempts to elicit opinion testimony from Officer Rathgeber were as follows:

> Q: Officer, based on your over ten years of law enforcement experience and your training, can you come to any conclusions regarding Nicholas Kennedy's possession of that cocaine and his intent with respect to that possession?
> Mr. Palermo: Objection, Your Honor.
> The Court: Sustained.
> . . .
> Q: What did you believe his intent was in possessing that cocaine?
> Mr. Palermo: Objection, Your Honor.
> The Court: Sustained.
> . . .
> Q: In your experience, is that an amount [of cocaine] for personal use?
> Mr. Palermo: Objection, Your Honor.
> The Court: Sustained.
> . . .
> Q: Based on the location that the cocaine was recovered, as well as the cocaine that you saw in his left pants pocket, what, if any, conclusions can you draw?
> Mr. Palermo: Objection, Your Honor.
> The Court: Sustained.
> Q: What do you think happened with respect to the cocaine while Mr. Kennedy was in the car?
> Mr. Palermo: Objection, Your Honor.
> The Court: Sustained.

(Trial Tr. at 98–100.)

Sergeant James Scimone, of the Suffolk County Police Department, also testified at trial. His testimony about the stop and subsequent arrest of the petitioner was largely consistent with Officer Rathgeber's account. (*Id.* at 152–54.)

Sergeant Scimone also testified that Kevin Ocasio, the petitioner's step-father, approached the officers. (*Id.* at 184.) According to Sergeant Scimone, Mr. Ocasio said that the "stuff" was his. (*Id.*) Mr. Ocasio was placed in a squad car and transported to the precinct stationhouse. (*Id.* at 184–85.)

Both Sergeant Scimone and Detective John Newton, a detective for the Neighborhood Enforcement Special Operations Team had over twenty years of law enforcement experience, and had participated in hundreds of drug investigations, a large portion of which involved cocaine. (*Id.* at 171–73, 225–26.) The officers had executed cocaine search warrants and investigated cocaine trafficking, surveilled cocaine dealers, participated in investigations that involved controlled buys, and debriefed people who had bought and sold cocaine. (*Id.* at 172–73, 226–27.) They were trained to perform field tests on cocaine, and were familiar with the activities of mid-level and street level cocaine dealers, as well as quantities and costs of cocaine packaged for street sales. (*Id.* at 173, 227.)

Judge Ralph Gazzilo granted the prosecutor's applications, over defense counsel's objections, to deem Sergeant Scimone and Detective John Newton experts in street level narcotics trafficking. (*Id.* at 174, 227–28.) The judge then defined expert testimony for the jurors:

> Members of the jury, when a case involves a matter of science or requiring special knowledge or skill not ordinarily possessed by the average person, an expert is permitted to state his or her opinion for the benefit of the Court and the jury.
>
> When a witness gives an opinion as an expert in his or her field, that opinion is entitled to your respect and is to be considered in your deliberations. Nevertheless, you must bear in

> mind it is opinion evidence only and it still remains your duty irrespective of such
> opinion evidence to render all -- to consider all of the evidence in the case in your
> deliberations as to the defendant's guilt or innocence.

(*Id.* at 174–175; *see also* Trial Tr. at 228.)

According to Sergeant Scimone, cocaine was typically sold on the street in small glassine envelopes in quarter gram or half gram quantities. (*Id.* at 175.) Detective Newton explained that cocaine is typically sold in quantities of a gram to 3.5 grams (an eight ball), an ounce is worth $750 to $1100, and a gram sells for $30 to $40 on the street. (*Id.* at 229.) The cocaine in the petitioner's car weighed just over five ounces, or 150 grams, roughly 1,000 portions. (*Id.* at 176, 228–29.) Both Sergeant Scimone and Detective Newton explained that this quantity was not consistent with personal use, but instead with street level drug sale. (*Id.* at 177, 229.)

In addition to the weight and packaging of the drugs, Sergeant Scimone noticed other things that were inconsistent with personal use. The petitioner, although young, was carrying a significant amount of money—more than $400—and was driving an expensive SUV with leather seats and flat screen televisions in the back. (*Id.* at 177.) He also had two cell phones. (*Id.*)

On March 31, 2007, Detective Newton did a field test on the cigarette from the petitioner's car, and confirmed the presence of marijuana. (Trial Tr. 220–21.)

Detective Newton also interviewed Kevin Ocasio at the stationhouse. (*Id.* at 223.) Mr. Ocasio claimed to be the true owner of the cocaine, but he could not say where he got the cocaine, or how much was in the car. (*Id.* at 224.) The detective did not believe Mr. Ocasio's story. (*Id.*)

Forensic scientist Matthew Dinizio, who worked for the Suffolk County Crime Laboratory in the drug chemistry section, tested the substance, which weighed 149.28 grams, and

confirmed that it contained cocaine. (*Id.* at 204–05.) The same analysis on the residue from the petitioner's jeans confirmed the presence of cocaine. (*Id.* at 206–07.)

The defense called Jennifer Wells and her boyfriend, Anthony Degrijz, friends of the petitioner. Ms. Wells claimed that she and Mr. Degrijz were waiting for the petitioner at his mother's house on March 31, 2007 so that Mr. Degrijz could cut his hair. (*Id.* at 249.) They looked out the window, and saw that the police had pulled the petitioner over. (*Id.* at 248) Moments later, the petitioner's step-father, Kevin Ocasio, sped into the driveway, slammed on the brakes, jumped out of the car, and said, "That's my shit. That's my shit. I'm going down there." (*Id.* at 250.) Mr. Ocasio returned twenty minutes later and reiterated, "That was my shit. Nicky didn't know it was there." (*Id.* at 252.)

Anthony Degrijz, Ms. Wells' boyfriend, also said that he was at the home of the petitioner's mother on March 31, 2007. (Trial Tr. at 320–21.) Like Ms. Wells, Mr. Degrijz testified that Mr. Ocasio pulled up in a car, jumped out and said, "Oh, my God. That's, you know, my shit in the car." (*Id.* at 321.) Mr. Ocasio rushed to the petitioner's car. (*Id.* at 322) Mr. Degrijz and Ms. Wells walked over to where the police had stopped the petitioner, learned that they planned to charge him with a felony, and returned to the house on Cherry Street. (*Id.* at 322–23.) About twenty minutes later, Mr. Ocasio also came back to the house and repeated, "That's my shit. It's in the car." (*Id.* at 323–24.)

Ms. Wells claimed that Officer Rathgeber approached her two days later and asked her what she was going to say in her testimony. (*Id.* at 253–55.) According to Ms. Wells, Officer Rathgeber said, "You know, it's very confusing the way that all this is happening, and you know, I feel bad but, you know, this is what -- this is what's got to happen." (*Id.* at 255.)

### ii. Examination of Kevin Ocasio

After Ms. Wells testified, defense counsel announced, out of the presence of the jury, that he planned to call Kevin Ocasio as a witness. Because Mr. Ocasio planned to confess that the cocaine was his—thus admitting to a felony—the judge wanted to ensure that Mr. Ocasio had a lawyer, and understood the possible ramifications of testifying. The judge explained to Mr. Ocasio in the presence of the prosecutor and the defense lawyer that his sworn testimony involved a serious crime, which might subject him to incarceration. (Trial Tr. at 266.) The judge ascertained that Mr. Ocasio had a lawyer, told Mr. Ocasio to return the next day with his attorney, and instructed him to speak with his attorney before testifying. (*Id.* at 266–68.)

The following day, Mr. Ocasio came with his lawyer, who questioned him under oath. (Trial Tr. at 275.) At the time of the trial, he was in mental health court. (*Id.* at 297.) Mr. Ocasio testified to a history of drug addiction and mental illness, including delusions and hallucinations. (*Id.* at 278–84.) Mr. Ocasio also testified that he had been electrocuted, after which his life "went downhill," and that his life was "ruined anyway." (*Id.* at 292, 294.) Mr. said that he was high in April of 2007, and "didn't want someone to get in trouble for [his] drugs." (*Id.* at 285–86.)

Mr. Ocasio's lawyer informed him that he had the constitutional right not to testify about committing a crime, and that if he admitted to possessing the cocaine, he could subject himself to prosecution for criminal possession. (*Id.* at 288.) The trial court judge also advised Mr. Ocasio that if he testified the prosecutor would examine him. (Trial Tr. at 290–92.) Mr. Ocasio said that he understood what he was doing, and that he had not been pressured or paid to testify. (*Id.*)

The assistant district attorney also told Mr. Ocasio that he could be prosecuted for drug possession, and that an admission to drug possession might violate the terms of his drug

7

treatment program, and might affect his status in mental health court. (*Id.* at 296–97.) Defense

counsel objected that the prosecutor was trying to scare Mr. Ocasio. (*Id.* at 297.) The judge

overruled the objection, and the assistant district attorney put the following questions to Mr.

Ocasio:

> Q: What is perjury?
>
> A: It's when you lie about something.
>
> Q: Okay. Do you understand that if you take the stand --
>
> A: Yeah.
>
> Q: -- and you lie and you're convicted of perjury or even if you are suspected of it, Probation could investigate and they could file a VOP and you could be terminated from mental health court and you could be sent to jail? Do you understand that?
>
> A: Yeah. But I don't know why you keep threatening me about jail because I'm doing what the courts told me to do every week.

(Trial Tr. at 299.) Following the prosecutor's questioning, Mr. Ocasio's lawyer asked him the

following:

> Q: I want to make you aware of one possible outcome of this that you may not have thought about. You could take the witness stand and testify, as you've told me, you're prepared -- the way the story -- the way you have told me you told the detective. Nicholas could end up being convicted of the charge for which he's on trial and the DA could then bring a charge against you for having lied during this trial. You could end up in jail and he's in jail, also, and then your story will not be believed but you will have put yourself in a bad situation. Do you understand that possibility?
>
> A: Yeah. But why would they change something that this is -- why would they make something up that isn't there? I was there. I know what happened.
>
> Q: You didn't listen to me if that's your response. You've got to listen to me.
>
> A: All right.
>
> Q: This is extremely serious. You want to get up and testify that -- what the truth is in this case.
>
> A: Right.

8

Q: That may not – the jury may not believe you. They may convict Nicholas. Do you know that? Even if you testify, there's no guarantee that Nicholas is going to walk away from all of this.

A: No. That's messed up on their part.

. . .

Q: If you don't understand that the outcome could be that he gets convicted and that you get in further trouble, then you shouldn't take the witness stand. You have to understand that possibility.

A: All right. All right. I understand.

(*Id.* at 299–304.) Despite counsel's warning Mr. Ocasio insisted that he still wanted to testify.

(*Id.* at 306–07.)

After a break, the petitioner's lawyer announced that he was ready to proceed. (*Id.* at

316.) The following colloquy took place:

THE COURT: All right. All right. And also, just so the record is clear, it's my understanding we're going to excuse Mr. Ocasio.

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: You don't intend to call him at any time?

DEFENSE COUNSEL: I do not.

(*Id.*)

### iii. Summations

In his summation, defense counsel set forth the premise of the defense: that the plaintiff

did not know the drugs were in the car. Instead, counsel argued, "[t]he only person who knew

those drugs were in that location is Kevin Ocasio." (Trial Tr. at 347.)

The assistant district attorney responded that "[t]he presence of cocaine in Nicholas

Kennedy's Lexus is presumptive evidence of knowing possession of the cocaine by Nicholas

Kennedy," and that the cocaine in the petitioner's pants pocket was "[t]race evidence": "There is the theory that every contact, no matter how slight, leaves a trace." (Trial Tr. at 360.) Defense counsel's general objection was overruled. (*Id.*) The prosecutor continued:

> The nice thing about trace evidence is that it's objective.
>
> We know, because cocaine was found in Nicholas Kennedy's jeans, that at some point his jeans were in contact with cocaine. Objective. We know that.
>
> Now, we could speculate about how that cocaine got on his jeans or we could look eighteen inches away to exactly the left front of the seat where the cocaine was recovered. . . . A police car pulls in behind him. He knows he has cocaine in his pocket. . . . He takes it out of his pocket, he goes to put it under the seat.

(Trial Tr. at 360–61.) The assistant district attorney asked the jury to draw the following conclusions:

> It's not a question of whether or not Nicholas Kennedy had possession of that cocaine but how.
>
> The auto presumption, you can agree with that. The presence of cocaine in Nicholas Kennedy's Lexus is presumptive evidence of knowing possession of the cocaine by Nicholas Kennedy.
>
> The trace evidence theory, the cocaine in his jeans pocket. He sees the police car, takes it out, puts it on the seat just in front of the seat.

(Trial Tr. at 363.) The prosecutor also responded to defense counsel's theory that Kevin Ocasio was the owner:

> And then at some point we have Kevin Ocasio enter the picture.
>
> Granted, all the theories that you heard about Kevin in the defense attorney's opening, Kevin going and buying this cocaine, using his key to snort it -- remember when Mr. Palermo said, "You've got to prove it. You can't just say it?" Well, he just said it.

(Trial Tr. at 366–67.) Defense counsel objected, claiming that the prosecutor had shifted the burden of proof; the judge overruled the objection, pointing out that the ADA was simply repeating arguments that counsel made in his opening. (*Id.* at 367.)

The prosecutor responded with his own theory about how it was that the cocaine found its way into the petitioner's pants pocket:

> And this is the Ziplock bag that we discussed. You can see quite clearly on both ends that there are two small rips.
>
> Now, again, we don't know how those rips were made, we don't know when they were made but there are two small rips.
>
> I would argue that at some point the cocaine, a little bit of it, got out of the bag and could have been as he's fumbling to get the bag out because the police are behind and he's got five point two six ounces of cocaine in his pocket and he's fumbling with it and he spills a little bit on his pants.

(*Id.* at 368–69.) Counsel objected, claiming that the ADA was speculating. (*Id.*) The judge cautioned the jurors that it was up to them to determine "what the evidence proves or not proves." (*Id.* at 369.)

In his final charge, the judge instructed the jurors that it was their "recollection of the evidence that governs," (*Id.* at 375), that the jurors were "the sole and exclusive judges of the facts," (*Id.* at 377), and that "it is your own recollection, your own understanding and your own evaluation of the facts presented by the evidence at this trial that control, not what counsel says or what I say about the facts." (*Id.* at 378.) The judge also told the jurors that they did not have to accept the lawyers' "arguments and conclusions about what the evidence does or does not show." (*Id.* at 379.)

The judge repeated and expanded upon his explanation about the use the juror's could make of expert testimony:

> When a witness gives an opinion as an expert in his field, that opinion is entitled to your respect and is to be considered in your deliberations.
>
> Nevertheless, you must bear in mind that it is opinion evidence only and it still remains your duty, irrespective of such opinion evidence, to consider all of the evidence in the case in your deliberations as to the petitioner's guilt or innocence.

11

You may reject an expert's opinion if you find the facts to be different from those which form the basis of that expert's opinion.

(Trial Tr. at 386–87.)

The court also gave the standard charge on the burden of proof, and specifically instructed the jury that "even though the defendant had introduced the evidence, the burden of proof remains on the People. The defendant is not required to prove that he is not guilty. In fact, the defendant is not required to prove or disprove anything. To the contrary, the People have the burden of proving the defendant guilty beyond a reasonable doubt." (*Id.* at 388–89.) And, the judge cautioned that, "[t]he burden of proof never shifts from the People to the petitioner." (*Id.*)

## B. Sentence

On April 25, 2008, the judge sentenced the petitioner to concurrent determinate terms totaling eight and a half years in prison.[4] (ECF No. 12-3 at ECF Page No. 14.)

## C. State Appeals and Collateral Attacks on the Petitioner's Conviction

On January 9, 2009, the petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department, claiming that the trial judge should not have allowed the police witnesses to give expert testimony on the ultimate issues of fact. The petitioner also contended that the prosecutor intimidated Kevin Ocasio to keep him from testifying, and that the integrity of the grand jury proceedings were impaired.

On January 19, 2010, in an opinion by the Honorable Reinaldo Rivera, the Appellate Division affirmed the petitioner's conviction. *People v. Kennedy*, 69 A.D.3d 881 (2d Dep't

---

[4] The petitioner was sentenced to eight and a half years and five years of post-release supervision for the second degree criminal possession conviction, seven years in jail and two years of post-release supervision for the third degree possession count, ninety days for the marijuana count, and one day for both vehicle and traffic law convictions. (ECF No. 12-3 at ECF Page No. 14.)

2010).[5] The court rejected the petitioner's claims about the grand jury; the court also found that the cocaine residue in the petitioner's pants pocket was admissible to establish that he also possessed the block of cocaine. *Id.*

Finally, the court rejected the petitioner's argument that the expert testimony was improper. *Id.* The court noted that as an initial matter, the issue was unpreserved for appellate review, and that any impropriety was harmless, "as there was overwhelming evidence of the petitioner's guilt, and no significant probability that the error contributed to his convictions." *Id.*

The court also rejected the petitioner's argument that the assistant district attorney "drove a key defense witness from the witness stand through intimidation;" on the contrary, the court concluded the "record shows that defense counsel chose not to call the witness to testify." *Id.* Finally, the court found that the prosecutor's summation was responsive to defense counsel's opening and closing statements, and that the prosecutor did not misstate the law. *Id.* at 882–83.

The court reduced the petitioner's sentence to five years, in the interest of justice. *Kennedy*, 69 A.D.3d 881.

The New York Court of Appeals denied the petitioner's timely application for leave to appeal on June 17, 2010. *People v. Kennedy*, 15 N.Y.3d 752 (2010).

The petitioner, appearing *pro se*, moved to vacate his conviction in the Suffolk County Court on February 28, 2011. (440 Motion (ECF No. 12-7 at ECF Page No. 45).) He argued that his lawyer was ineffective because he did not move to suppress the cocaine, and because he did not consult an expert chemist. (*Id.*) The petitioner also complained that his lawyer should have challenged the chain of custody of the drugs. (*Id.*)

---

[5] This decision also appears in the record at ECF No. 12-7 at ECF Page No. 74; ECF No. 12-6 at ECF Page No. 3; ECF No. 12-4 at ECF Page No. 47; and ECF No. 12-3 at ECF Page No. 16.

Judge Gary Weber denied the petitioner's motion to vacate on April 25, 2011. (Apr. 25, 2011 Decision Denying 440 Motion (ECF No. 12-7 at ECF Page No. 40).)

On June 20, 2011, the petitioner moved to renew his motion to vacate his conviction in Suffolk County.[6] (Notice of Mot. to Vacate J. (ECF No. 12-3 at ECF Page No. 22).) Three months later, on August 16, 2011, the petitioner withdrew his motion by letter. (Aug. 16, 2011 Letter to Clerk (ECF No. 12-3 at ECF Page No. 20).)

The petitioner filed a Motion to Reargue and Renew in the Suffolk County Supreme Court on October 19, 2011. (Mot. to Reargue (ECF No. 12-6 at ECF Page No. 27).) The petitioner asserted that he was represented on appeal by trial counsel, which created a conflict of interest, and that he received ineffective assistance of counsel at trial and on appeal. (*Id.* at ECF Page No. 29.)

Judge Weber denied this motion on December 1, 2011. (Dec. 1, 2011 Decision (ECF No. 12-6 at 11).) The court "adhere[d] to its original decision to the extent the motion is to reargue his previous Article 440 motion." (*Id.*) Further, the court observed that the Suffolk County Court did not have jurisdiction over the petitioner's claim that his appellate lawyer was ineffective. (*Id.*)

Although it does not appear to be included in the record filed in this action, the petitioner filed a coram nobis petition, again claiming that his lawyer was ineffective. On August 7, 2013, the Appellate Division, Second Department, denied the petition, holding that the petitioner had failed to establish that he was denied the effective assistance of counsel. *People v. Kennedy*, 109 A.D.3d 489 (2013).

---

[6] The Motion was dated June 16, 2011, and it was received by the Court on June 20, 2011. (Notice of Mot. to Vacate J. (ECF No. 12-3 at ECF Page No. 22).)

**D. Federal Habeas Corpus Petition**

The petitioner filed a federal habeas corpus petition *pro se*, pursuant to 28 U.S.C. § 2245 on February 10, 2012. He seeks review of the denial of his appeal by the Appellate Division, Second Department, the denial of leave by the Court of Appeals,[7] and the Suffolk County Court's affirmation of his conviction. He filed a motion for summary judgment on May 2, 2012, which the Honorable Margo K. Brodie denied.[8] On September 5, 2012, the petitioner filed a motion to hold his federal habeas case in abeyance to allow his case to be reopened and reconsidered, pursuant to a writ of error coram nobis. On September 30, 2013, Judge Brodie denied this motion as moot, in light of the Appellate Division's denial of the petitioner's writ of error coram nobis.

In this federal habeas corpus petition, the petitioner claims that the trial court should not have allowed the government to introduce evidence of uncharged crimes or to permit expert testimony, that the grand jury proceedings were impaired, and his right to a fair trial was violated by the exclusion of supposedly exculpatory evidence, by the jury instructions, and because the prosecutor intimidated a defense witness. The government opposes the petition. For the reasons set out below, the habeas corpus petition is dismissed.

## DISCUSSION

**A. Timeliness of the Petitioner's Section 2254 Application**

The government argues that the petition should be dismissed as untimely. Under the circumstances of this case, however, the petition is timely.

---

[7] The Court of Appeals denied the petitioner's CPL 460.20 application for leave because there was no question of law to be reviewed.

[8] This case was reassigned to me in November of 2015.

15

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a petitioner must file his writ of habeas corpus within one year of the date that the petitioner's conviction became final. 28 U.S.C. § 2254. A petitioner's conviction is final within the meaning of 28 U.S.C. § 2254 upon completion of direct appeal in the state's highest court and the United States Supreme Court. *See Davis v. Racette*, 99 F.Supp.3d 379, 384 (E.D.N.Y. 2015); *Hutzenlaub v. Portuondo*, 232 F.Supp.2d 40 (E.D.N.Y. 2002) (petitioner's conviction became final on the last day the petitioner could seek a writ of certiorari in the United States Supreme Court).

However, the one-year limitations period is tolled when a state court petition for relief is pending. *Bennett v. Artuz* 199 F.3d 116 (2d Cir. 1999). "A state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett*, 199 F.3d at 120. A petition must be filed properly for the statute of limitations to be tolled; "the possibility of filing an application for post-conviction relief is not enough to toll the limitations period." *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009). The post-conviction proceedings do not start the one-year statute of limitations anew; rather, the period that a post-conviction motion is pending is excluded from the one-year period. *Davis*, 99 F.Supp.3d at 385.

In this case, the judgment became final on September 16, 2010. *See Catala v. Bennett*, 273 F. Supp. 2d 468, 471 (S.D.N.Y. 2003) (a conviction is final when the petitioner's time to seek review in the United States Supreme Court expires, "which is ninety days after the date on which direct review of the case has been completed by the highest court in the state.") The petitioner successfully tolled the one-year period by filing two post-conviction motions after his conviction became final. Specifically, the petitioner filed a motion to vacate his conviction

pursuant to CPL 440 on February 28, 2011, which was denied on April 25, 2011, and the petitioner filed a motion to reargue on October 19, 2011, which was denied on December 1, 2011. If only the 57 days between February 28, 2011 and April 25, 2011, and the 44 days between October 19, 2011 and December 1, 2011 are excluded, the petition would not be timely.

However, if I also exclude the period between the June 20, 2011 and August 16, 2011—the date the petitioner filed his motion and then withdrew it—the petition would be timely.

The respondent argues that the withdrawal of the June 20, 2011 motion means that the motion should be treated as if it was never *filed* in the first instance." (Resp. Mem. at 2 (ECF No. 9).) I disagree. The respondent cites to no authority, and I have found none, for the proposition that the withdrawn state petition must be treated as though it had never been filed. In fact, the practice of courts in this district points to the opposite result; AEDPA's one-year statute of limitations has been tolled for the duration of a later-withdrawn state habeas petition. *See Musgrove v. Filion*, 232 F. Supp. 2d 26 (E.D.N.Y. 2002); *see also De Jesus v. Miller*, 215 F. Supp. 2d 410 (S.D.N.Y. 2002) (limitations period equitably tolled because petitioner showed that he relied on controlling case law to his detriment and requested his first petition be withdrawn).

This approach is consistent with the language of Section 2254, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection." 28 U.S.C.A. § 2244(d)(2) (emphasis added); *see also Saunders v. Comm'r*, No. 3:13-cv-626-MPS, 2016 WL 3812444, at *13 (D. Conn. July 13, 2016) ("The state habeas petition became final on July 27, 2005, when the petitioner withdrew the petition"). Thus, the statute of limitations was tolled for the period of time between his June 20, 2011 motion to vacate his conviction and the date he withdrew it, August 16, 2011.

The petitioner's conviction became final on September 16, 2011. Once the relevant periods are excluded, the time accrued until the petitioner filed this petition—September 10, 2011 to February 27, 2011 (164 days), April 26, 2011 to June 20, 2011 (55 days), August 16, 2011 to October 18, 2011 (63 days), and December 2, 2011 to February 10, 2012 (42 days)—was 324 days. Accordingly, the petition is timely.

## B. The Petitioner's Claims

AEDPA accords wide deference to state court determinations on questions of fact and law, and limits the federal courts' ability to grant writs of habeas corpus to a state prisoner. In relevant part, a federal court reviewing a state court conviction may grant a habeas petition only when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)(2).

A state court determination is "contrary to clearly established federal law" if it "applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent." *Fuentes v. T. Griffin*, 829 F.3d 233, 244 (2d Cir. 2016) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72, (2003)). The federal court may also reverse a state court decision pursuant to Section 2254 if the state court "unreasonably" applies the correct federal rule, but not if the state court made a reasonable mistake in applying the rule. *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003).

A habeas petitioner challenging introduction of evidence faces a heavy burden. Federal courts must not use Section 2254 to "reexamine state-court determinations on state-

law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (citation omitted). Instead, federal courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Erroneous evidentiary decisions warrant habeas relief only if they render the "trial fundamentally unfair." *See Evans v. Fischer*, 712 F.3d 125, 135 (2d Cir. 2013).

Likewise, while the prosecutor has a "duty to refrain from improper methods," habeas relief is only appropriate if "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (quoting *Darden v. Wainwright*, 477 U.S. 168, 180, (1986)).

### i. Evidentiary Ruling as to the Cocaine Residue

The petitioner maintains that the trial court's admission of the cocaine residue found on the petitioner's pants was a constitutional error. (Habeas Petition (ECF No. 1 at ECF Page No. 11).) It was not.

The evidence was admissible because it was relevant to establish the petitioner's knowledge that there was cocaine in his car, as well as his connection to it. In any event, New York law permits courts to admit evidence of uncharged crimes when it is probative to an issue other than the defendant's propensity to commit the illegal conduct. *See People v. Rojas*, 97 N.Y.2d 32, 37 (N.Y. 2001); *see also People v. Molineux*, 168 N.Y. 264, 264 (1901). This is consistent with the federal rules; Rule 404(b) of the Federal Rules of Evidence permits evidence of uncharged crimes, not to show that a defendant has propensity to commit the charged crime, but for other purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Habeas relief is not warranted where a state court admitted evidence in in conformity with Rule 404(b). *See Alexander v.*

19

*Walker*, No. 03-cv-8440-NRB, 2004 WL 1857575, at *5 (S.D.N.Y. Aug. 19, 2004); *Williams v. Philips*, No. 02-cv-5811-DC, 2003 WL 21961127, at *6 (S.D.N.Y. Aug. 18, 2003).

In this case, the cocaine in the petitioner's pocket was evidence that the petitioner knew about the larger quantity of the cocaine near the driver's seat. The probative value of this evidence outweighed any prejudice to the petitioner. After all, the petitioner was charged with possessing a brick of cocaine worth about $5,000; the fact that he also had miniscule amount of cocaine in his pocket would hardly have made a difference to the jury's estimation of the seriousness of the crime. What the evidence did do was connect the petitioner to the larger quantity of cocaine, which was entirely fair. Moreover, the trial court gave the jury a limiting instruction, which sufficed to eliminate any prejudice. Under the circumstances, the trial court's decision to admit the residue was consistent with federal and state law. Thus, this claim does not form the basis for habeas relief.

### ii. Expert Testimony regarding Cocaine Quantity and Value

The petitioner also challenges the trial court's decision to allow Sergeant Scimone and Detective Newton to give expert opinion testimony on street level narcotic sales, as evidence that the quantity of cocaine recovered was inconsistent with personal use. According to the petitioner, this testimony usurped the jury's fact finding province. (Habeas Petition (ECF No. 1 at ECF Page No. 12).)

Under New York law, an expert is permitted to testify about subjects that are beyond the "ordinary knowledge and experience" of the jury. *People v. Ingram*, 2 A.D.3d 211, 212 (1st Dept. 2003) (citing *Matott v Ward*, 48 NY2d 455, 459 (1979)). That includes expert testimony about narcotics transactions. Thus, a prosecutor may present expert testimony about the quantity of cocaine typically possessed for personal use. *Id.* Likewise, an expert may offer an opinion

about "whether the quantity of drugs recovered from petitioner was 'consistent with selling.'"

*People v. Resek*, 307 A.D.2d 804 (1st Dept. 2003), *rev'd on other grounds*, 3 N.Y.3d 385, 821 N.E.2d 108 (2004). This is all that happened here. Both Detective Newton and Sergeant Scimone described their backgrounds and experiences as law enforcement officers, and their respective familiarity with street level narcotics transactions. They each gave an opinion that the quantity of cocaine in the petitioner's car—over five ounces—was not consistent with personal use. Neither officer testified that the evidence constituted possession with intent to sell. *People v. Goodwine*, 177 A.D.2d 708, 709 (1991) (question of whether the possession of more than four vials of crack cocaine constitutes possession with intent to sell "invade[d] the jury's exclusive province of determining an ultimate fact issue in the case.").

Even if the petitioner's challenge to the introduction of the expert testimony had merit—and it does not—federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted). A state law ground is "adequate" if the principle is "firmly established and regularly followed by the state in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citation omitted).

In this case, Appellate Division ruled that the petitioner failed to preserve his claim for appellate review, which is an independent and adequate state law ground. That the Appellate Division went on to consider the merits of the petitioner's challenge to the admission of the expert testimony does not remove the procedural bar. *Taylor v. Connelly*, 18 F. Supp. 3d 242, 264 (E.D.N.Y. 2014); *Smith v. Lee*, No. 11-cv-0530-MKB, 2014 WL 1343066, at *7 (E.D.N.Y. Mar. 31, 2014). In addition to asserting that the petitioner's challenge to the admission of the

expert testimony was "unpreserved for appellate review," the state court held that even if the testimony was improper, its admission was harmless, "as there was overwhelming evidence of the petitioner's guilt, and no significant probability that the error contributed to his convictions." When a state court finds that a claim is not preserved, but then holds "in any event" on the merits, the claim is procedurally defaulted. *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005); *See also Taylor*, 18 F. Supp. 3d at 264 (collecting cases).

The petitioner asserts that even though the issue was not preserved for appellate review, "in the interest of justice this claim should be reviewed by the Court because there was no evidence to support the expert witness testimony to indicate that petitioner was a drug dealer." (Habeas Petition (ECF No. 1 at ECF Page No. 12.) A federal court may consider a claim that is procedurally barred only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). The plaintiff does not argue, and the record does not suggest, that either the cause or the prejudice prong were met. Nor does the petitioner make a claim of actual innocence. Thus, failure to review the petitioner's claim that the introduction of the expert police opinion would not result in a miscarriage of justice. *Johnson v. Bellnier*, 508 F. App' x 23, 25 (2d Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Accordingly, the petitioner's complaint about the admission of testimony does not fall within any of these exceptions, and thus, does not warrant habeas relief.

### iii. Grand Jury Proceedings

The petitioner also claims that the integrity of the grand jury proceeding was undermined because the prosecutor failed to introduce exculpatory evidence, and because the prosecutor did not instruct the grand jury that the automobile presumption was rebuttable. (Habeas Petition (ECF No. 1 at ECF Page No. 14).) This claim, even if true, cannot succeed because there is no constitutional right to a grand jury in a state criminal prosecution. *Davison v. The People of the State of N.Y.*, No. 12-CV-2362-ENV, 2015 WL 7571817, at *10 (E.D.N.Y. Nov. 24, 2015) (citing *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990)). Consequently, claims arising from state grand jury proceedings are not properly considered for habeas relief. *Davison*, 2015 WL 7571817, at *10 (collecting cases); *Davis v. Mantello*, 42 F. App'x 488–90 (2d Cir. 2002) ("[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.").

### iv. Alleged Witness Intimidation

The petitioner contends that the assistant district attorney intimidated a potential defense witness, Kevin Ocasio, by threatening to prosecute him for perjury. (Habeas Petition (ECF No. 1 at ECF Page No. 15).) Presumably, the petitioner bases this claim on the colloquy that took place on the record in the presence and with the participation of the trial judge, the petitioner's lawyer, Mr. Ocasio and his lawyer, and the prosecutor. The record refutes the petitioner's claim.

Of course, real threats or intimidation that discourage a petitioner's witness from testifying—including threats or prosecution—may very well violate a petitioner's due process rights. *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988) (citing *Webb v. Texas*, 409 U.S. 95, 97–98 (1972)). However, relief is warranted only if the prosecutor "interfered substantially

with a witness's 'free and unhampered choice' to testify." *Pinto*, 850 F.2d at 932 (citation omitted). That is not what happened here.

The trial court was presented with a witness—Mr. Ocasio—who was prepared to admit, without a promise of immunity, that he possessed a significant quantity of cocaine. As an initial matter, the trial court had to decide whether Mr. Ocasio was going to invoke his privilege against self-incrimination before a jury, which the court could prohibit. *People v. Lyons*, 180 A.D.2d 440, 441 (1992).

Moreover, the judge was obligated to make sure that Mr. Ocasio understood the potential consequences of his testimony. Thus, questions that were put to Mr. Ocasio—by the judge, the prosecutor, and Mr. Ocasio's lawyer—were not designed to threaten or intimidate him, but to ensure that Mr. Ocasio understood that he might face very serious consequences if he testified. The record established not only that Mr. Ocasio was on probation, but also that he was currently in treatment court, which conditioned his participation on compliance with certain rules; if he admitted possessing, using, or selling drugs, or if he committed perjury, the potential legal ramifications were serious. Additionally, the judge no doubt recognized that Mr. Ocasio had a history of mental illness, and thus had to be doubly sure that Mr. Ocasio comprehended his situation, and that no one was forcing him or tricking him into testifying.

In any event, it is apparent that Mr. Ocasio's failure to testify was not the product of threats or intimidation by the prosecutor, but because of counsel's decision not to call him. Indeed, at the end of the detailed colloquy, Mr. Ocasio was determined to testify. It was defense counsel, after consulting with the petitioner, who made the strategic decision not to call Mr. Ocasio.[9] Thus, the petitioner's claim fails.

---

[9] Appended to the state court record are letters between the petitioner and his criminal defense attorney. In response to a letter from the petitioner asking his former counsel to explain, "How come you did not call Kevin Ocasio to the

24

### v. *Assistant District Attorney's Summation*

Finally, the plaintiff challenges the prosecutor's summation. Although he does not identify the specific comments to which he objects, he alleges that the prosecutor misled the jury by misstating the automobile presumption.[10] (Habeas Petition (ECF No. 1 at ECF Page No. 19).)

The prosecutor did not misstate the law; on the contrary, his description of the automobile presumption—that "the presence of cocaine in Nicholas Kennedy's Lexus is presumptive evidence of knowing possession of the cocaine by Nicholas Kennedy"—is a correct application of the New York automobile presumption. *See* N.Y. Penal Law § 220.25(1) ("The presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found"). Indeed, defense counsel saw no reason to object to the prosecutor's explanation of the presumption, probably because it was an accurate description of the law.

Moreover, the prosecutor's comments were responsive to defense counsel's summation arguments that the petitioner did not know that there was a large amount of cocaine near the driver's seat of his car, and that the only person who did know about the cocaine was Mr. Ocasio. The assistant district attorney's rejoinder—that the petitioner owned and was driving the car, and that he had cocaine residue in his pocket—was both an accurate recitation of the

---

witness stand," (Petitioner's Letter to Def. Counsel (ECF No. 12-4 at ECF Page No. 21)), counsel wrote the following:

> With regard to Mr. Ocasio, again, it was your decision, after my advice, to not call him. As you should remember, we learned that the people had a wealth of cross-examination material concerning his mental capabilities. This fact, coupled with his reluctance to testify (when the time came) caused the decision, which again was yours, to not call him as a witness.

(Def. Counsel's Letter to Petitioner (ECF No. 12-4 at ECF Page No. 24).)

[10] The state appellate court denied this claim on direct appeal on the grounds that the summation remarks were responsive to defense counsel's arguments in opening and summation, and that the prosecution did not misstate the law.

evidence, and was appropriately responsive to defense counsel's summation. *See Ariza v. Lee*, No. 13-cv-359, 2013 WL 6008920, at \*10 (E.D.N.Y. Nov. 13, 2013) (denying writ because prosecution's statements were responsive to the defense counsel's summation and "represented fair comments on the evidence.").

In the context of the entire case, the prosecutor's comments were fair and appropriate. *Jackson v. Conway*, 763 F.3d 115, 144 (2d Cir. 2014) (The court must "consider the record as a whole" when determining whether the prosecutor's comments infected the trial with unfairness). Because there was nothing unfair about the summation, there is no basis for habeas relief.

## CONCLUSION

For the reasons outlined above, the petition for a writ of habeas corpus is dismissed, and the writ is denied. Because the plaintiff has not made a substantial showing that he was denied any constitutional rights, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). I certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly
_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
February 6, 2017